PEOPLE v. THOMAS.

1. CRIMINAL LAW—IDENTITY OF DEFENDANT—EVIDENCE.
    Evidence as to identity of defendant, charged with armed robbery of taxicab driver shortly after midnight, *held*, sufficient to support verdict of guilty (CL 1948, § 750.529).

2. SAME—CONFESSIONS—CONFLICTING   TESTIMONY—INSTRUCTIONS—REQUEST TO CHARGE.
    No error was committed by trial court in failing to give instructions, *sua sponte,* relative to confessions as to participation in crime of armed robbery, where the testimony as to the voluntariness of the confessions was in conflict but no request to charge was made (CL 1948, §§ 750.529, 768.29).

---

REFERENCES FOR POINTS IN HEADNOTES
[2, 3] 53 Am Jur, Trial § 513.
[4,5] 58 Am Jur, Witnesses § 749 *et seq.*
[4, 5] Right to cross-examine accused as to previous prosecution for, or conviction of, crime, for purpose of affecting his credibility.   6 ALR 1608; 25 ALR 339; 103 ALR 350; 161 ALR 233.
[6] 53 Am Jur, Trial §§ 78, 937–940.

3. SAME—INSTRUCTIONS—REQUEST TO CHARGE—DUE PROCESS.

Failure of the trial court to instruct the jury on any point of law in the absence of a request to charge thereon by the defendant does not necessarily result in a denial of due process in view of statute providing that failure to instruct under such circumstances shall not be ground for setting aside the verdict (CL 1948, § 768.29).

4. SAME—PROSECUTOR'S REFERENCE TO OTHER CASES.

Assistant prosecuting attorney's reference to another offense with which defendant had been charged, made during cross-examination of defendant, did not constitute reversible error, where defendant's attorney was permitted to show that defendant was acquitted on the trial of such other case.

5. SAME—REFERENCE TO OTHER OFFENSES—PREJUDICE.

Whether there is prejudice or the degree of prejudice, if any, in the making of a reference to another criminal prosecution of one presently being prosecuted for crime, depends on the circumstances and nature of each individual case.

6. SAME—COLLOQUY BETWEEN JURY, TRIAL JUDGE AND PROSECUTOR IN ABSENCE OF DEFENSE COUNSEL.

Colloquy, when defense counsel was absent from the courtroom, had between jury, trial judge and assistant prosecuting attorney, at which the latter two gave their version of certain testimony in response to jury's request *held*, not reversible error, where statements made were not misleading, although the commendable practice would have been to have caused the stenographic notes to be read on the point spoken of by. the jury.

7. APPEAL AND ERROR—QUESTIONS REVIEWABLE—STATEMENT OF QUESTIONS INVOLVED.

Claimed errors which are not set forth in the statement of questions involved and which are of such a nature as not to need to be specifically disposed of on appeal from conviction for armed robbery are not discussed (CL 1948, § 750.529).

Appeal from Recorder's Court for the City of Detroit; Stein (Christopher E.), J. Submitted January 31, 1952. (Docket No. 92, Calendar No. 45,077.) Decided May 16, 1952.

James J. Thomas was convicted of robbery armed. Affirmed.

*Max Tauber* and *Mark Friedman* (*Robert Newton Smiley,* of counsel), for appellant.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Gerald K. O'Brien,* Prosecuting Attorney, and *Joseph A. Sullivan,* Assistant Prosecuting Attorney, for the people.

Reid, J. On leave granted, defendant appeals from his conviction and sentence for robbery armed. Defendant claims errors on grounds of failure of trial judge, *sua sponte,* to instruct the jury respecting confessions as evidence, improper admission of evidence respecting other offenses, and improper recitals by court and prosecutor to the jury of some phases of the testimony in unexplained absence of the attorney for defendant.

Defendant and another, Willie Jenkins, were jointly tried and each found guilty by a jury in recorder's court for the city of Detroit, on March 3, 1949, of an armed robbery* committed March 21, 1948.

Defendant claims that the victim of the robbery, Glenn Baltz, had so poor opportunity to see the 2 robbers, and Baltz' recollection when testifying a year later was so indistinct, that without proof of alleged confessions, the jury would not or might not, have found defendant guilty.

Baltz testified that the 2 men hailed him at Woodward and the Boulevard in Detroit at about 12:30 a.m., March 21, 1948; it was dark; the 2 men got into witness' taxicab and after other directions finally directed him to drive down Pinehurst and told him to stop near Chippewa, where the 2 men, who had been riding on the back seat, told him it was a stick-up; witness said, "What do you mean, a stick-up?"; that defendant Thomas had a knife. Witness further testified,

---

* See CL 1948, § 750.529 (Stat Ann § 28.797).—Reporter.

· "They asked me for the dough. They took the money out of the changer, bills in my pocket and looked through my billfold. They took $23 and some cents. I saw only one knife. The tall guy who was doing the talking had it.

"*Q.* And you identify him as James J. Thomas, is that right?

"*A.* Yes."

Witness further testified,

"After that he grabbed the keys out of the car, and I said to leave me the keys, and he said·they would leave them down the street. He left them down the street, about half a block away. I saw them go away."

Witness further testified that defendant is the one who told him to stop and held the knife on the witness; that Jenkins stood outside the door with his hands in his pockets; that the defendant took the money and asked Jenkins if he had the witness covered, to which Jenkins replied in the affirmative; that this took about 3 minutes, about 5 before they got away; that defendant did the work; that Jenkins stood there. Witness further testified:

"I claim I had a pretty good look at these 2 men."

Officers Cochill and Kennedy testified to confessions made by the 2 men after their arrest. Jenkins testified he was beaten by officers and denied that he confessed. Defendant testified that he was threatened by officers but did not confess.

Defendant claims that the trial court must instruct the jury on the law relating to confessions, without request, where there is a conflict of testimony as to whether the confession is voluntary.

Defendant cites and relies upon *People* v. *Prestidge,* 182 Mich 80, in which there was uncontradicted testimony which showed that the confession of defendant in that case was not voluntary. The opinion

in the *Prestidge Case* is therefore not controlling in the instant case where the voluntariness of the confession is in dispute.

Plaintiff cites *People* v. *Eddy,* 252 Mich 340, in which there were no requests to charge and the court made no reference whatever in his charge to the statements or confessions reported to have been made by the respondent, and in which case the conviction was confirmed. There was a very *substantial question* in the *Eddy Case* as to whether the 2 confessions signed by Eddy were voluntary. The opinion in the *Eddy Case* recites at page 343,

"He claims that when he was at the office of the State police in Jackson, he was struck on the mouth by a State trooper, and that his lips bled for a considerable period."

We further quote from the *Eddy Case,* pages 344 and 345:

"It is further claimed that the court erred in not charging the jury that they should not pay attention to the statements or confessions of respondent. While it would have been very proper for the court to have made reference to the confessions inasmuch as he discussed the other testimony and he should have done it *sua sponte,* there was no error in his failing to do so under the circumstances. The confessions were introduced, and full and complete testimony was given to show the circumstances under which they were obtained and that they were voluntary. Respondent in his defense claimed that they were improperly obtained. It became a question of fact thereupon, whether the confessions were signed by respondent in the form in which they were introduced and whether they were made without duress, threats, or promises. Respondent was defended by able counsel who made no requests to charge whatsoever. He did not deem it necessary after the court gave its charge to ask that further

instructions be given in regard to the confession. He kept absolutely silent. The failure to make requests to charge precludes him from objecting to the incompleteness of the charge. *People* v. *Smith,* 122 Mich 284."

No error was committed by the court in the instant case in the matter of not charging the jury as to the confessions.

Our statute, CL 1948, § 768.29 (Stat Ann § 28.-1052), provides in part as follows:

"The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused."

Defendant claims that construing this statute to excuse the failure of the court to instruct the jury as defendant claims the jury should have been instructed, results in want of due process. We find no want of due process.

Defendant further claims that the assistant prosecuting attorney's reference regarding other offenses, constituted reversible error.

On the cross-examination of defendant by Mr. Kotelly, the assistant prosecuting attorney, the following occurred:

"*Q.* Did you make a statement at the prosecuting attorney's office on the night of November 8, 1948?

"*The Court:* Regarding this case, you had better put it.

"*Mr. Kotelly:* If your Honor please, in *People* v. *Wright* [315 Mich 81], I have a right to go into admissions on other matters as well.

"*The Court:* Go ahead.

"*Mr. Tauber* [attorney for defendant Thomas]: Well, then, let's go into them.

"*Q.* Did you?

"*A.* Yes, I did, if you want to take it that way.

"*Mr. Tauber:* Now, if your Honor please, I want to—I ask for the right to show what happened to that particular case; otherwise, I am going to ask for a mistrial.

"*The Court:* All right, I told the prosecuting attorney.

"*Q.* What else did you say to the police officers at this time?

"*A.* I didn't say anything; they put me back in the cell block."

Following the above matters, defendant testified on redirect examination that he was acquitted on the trial of the case spoken of by Mr. Tauber.

Defendant was permitted to show his acquittal in the other case, the only privilege respecting that phase of the case that he requested.

"A statement by the prosecutor that he expected to prove certain facts but not followed by proofs is not ground for reversal of a conviction if the statement was made in good faith as the jury must be presumed to have based their verdict upon the evidence and not upon the statement." *People* v. *Ryckman* (syllabus 2), 307 Mich 631.

The foregoing statement in the *Ryckman Case* may serve to point out the general consideration of statements by a prosecutor about other cases in which the defendant is claimed to have been involved. Whether there is prejudice or the degree of prejudice, if any, depends on the circumstances and nature of each individual case. No error occurred in the case at bar, in view of the statements made by defense counsel at the trial.

Defendant further claims there was reversible error because the trial judge and the prosecutor gave the jury their versions of the testimony in response to requests by the jury who had been brought into the courtroom during their deliberations on the verdict. This has reference to the following which

occurred when the jury returned to the courtroom, when defense counsel was absent for reasons not explained:

"*The Foreman:* There is some question, your Honor, as to whether or not the defendants at the time of the robbery in question, whether or not they had a knife—at the time of the confession, rather—I am sorry—that it was confessed as robbery armed.

"*The Court:* Am I right about that?

"*The Foreman:* They claimed they had a knife, didn't they?

"*The Court:* You heard that testimony. They claimed there was a knife, didn't they?

"*Mr. Kotelly:* That is right.

"*The Court:* And the knife was offered in evidence?

"*Mr. Kotelly:* No, it wasn't in evidence but they admitted that they had a knife.

"*The Foreman:* At the time of the confession or at the time of the robbery?

"*Mr. Kotelly:* At the time of the confession they claimed they had a knife at the time of the robbery.

"*The Court:* That was the statement taken before the police officers. You have heard their testimony regarding that, and they admitted that.

"*The Foreman:* Whether or not it was at the time of the confession or at the time of the robbery?

"*The Court:* They confessed they had it at the time of the robbery, if I am right, now.

*Mr. Kotelly:* And the cab driver also testified he saw the knife, if your Honor please.

"*The Court:* Is that all?

"*The Foreman:* Yes.

"*The Court:* Very well."

Witness Baltz had testified that defendant had a knife; and defendant claims the statements of the court and prosecutor to the jury to be erroneous because of their saying to the jury that at the time

of the confession *they* claimed *they* had a knife. Witness Kennedy testified,

"Thomas stated they held up the driver, and he, Thomas, didn't have a knife, that Jenkins had the knife."

When the juror asked whether or not the defendants at the time of the confession, confessed that *"they* had *a* knife," it is evident that the juror had in mind the possession of 1 knife, in the hands of 1 defendant and displayed by 1 defendant for the purpose of effectuating the robbery, and that the court used the statement that "they had a knife" with the same meaning. The statements by the court and assisting prosecuting attorney did not mislead the jury. Commendable practice would have been to have caused the stenographic notes to be read on the point spoken of by the jury. There was no reversible error.

Other claimed errors are not set forth in the questions involved as stated by the defendant, and are of such nature that they need not be specifically disposed of. Judgment affirmed.

NORTH, C. J., and DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.